## PHYLLIS B. WEATHERS v. JOHN AUGUST ANDERSON.

189 N. W. (2d) 398.

May 7, 1971—No. 42487.

*Arthur Roberts* and *James T. Prest,* for appellant.

*Bruess, Boyd, Andresen & Sullivan* and *David P. Sullivan,* for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Odden, JJ.

NELSON, JUSTICE.

This action was brought by Phyllis B. Weathers pursuant to Minn. St. 559.01 to determine an adverse claim asserted by John

August Anderson to plaintiff's property arising out of defendant's purchase of tax assignment certificates relating to said property. After trial to the court without a jury, on December 31, 1969, the trial court filed its findings of fact, conclusions of law, and order for judgment, holding that plaintiff is the owner in fee simple of the subject property, that defendant's service of notices of expiration of redemption was insufficient, and that the period for redemption of the property from defendant's tax assignments has not expired. Judgment was entered accordingly on December 31, 1969. Defendant moved the court to set aside the judgment and dismiss the action or to amend the findings. The motion was denied, and defendant has appealed from the judgment.

In the autumn of 1953, plaintiff and her first husband, John Gillstrap, purchased certain property located on Burntside Lake near Ely, Minnesota, which property is the subject of this action. The real estate taxes for the year 1961 were not paid, although plaintiff continued to pay taxes on said property for subsequent years, missing one additional year.

The taxes for 1961 became delinquent, tax judgment was duly given and made in St. Louis County District Court on April 15, 1963, and the property was sold to the State of Minnesota pursuant to said judgment on May 13, 1963. Thereafter, on December 27, 1967, the property was assigned to defendant for the sum of $336.49. The St. Louis County auditor issued notices of expiration of redemption with respect to the property, which consists of 3 adjacent lots, on March 13, 1968. A deputy sheriff of St. Louis County certified on March 15, 1968, that the persons to whom the notices were directed, John Gillstrap and wife, could not be found in St. Louis County and that there was no person in actual possession of said land. Thereafter, copies of the notices of expiration of redemption were published on March 28, April 4, and April 11, 1968, in the Forum, a weekly newspaper published on Thursdays in Floodwood, Minnesota. Proof of such publication was filed with the St. Louis County auditor. No proof

of service in any other manner was filed with the county auditor. Plaintiff never received notice the period for redemption would expire and did not redeem the property within the time allotted by the published notices.

Plaintiff first became aware that defendant was making a claim to her property in March 1969, when she received 4 copies of a summons in a Torrens action through the mail. The Torrens action was brought by defendant to register title to the property which is the subject of this action. At all times pertinent hereto, plaintiff was a resident of Chicago, Illinois. Her first husband, John Gillstrap, died in 1959, and plaintiff married her present husband, Fletcher E. Weathers, in May 1966.

The property was purchased in 1953 by plaintiff and her first husband and used as a holiday and recreational home every summer from May to October and every Christmas season until Gillstrap's death in 1959. After her husband's death plaintiff's use of the property changed because she had to return to work in Chicago. However, she spent vacations and long holidays at the property until 1966, and at other times rented the property each year from 1960 to the present time. From 1955 on, plaintiff has employed a caretaker, Frank Osaben, Jr., to take care of the property and to open and close it each year.

The property consists of approximately 420 feet of shoreline on Burntside Lake. There are buildings including a main cabin, a guesthouse with a sauna, and a boathouse with two boat slips. These buildings are fully furnished with household furniture, heating equipment, and cooking and eating utensils. A fuel tank and electrical power lines are visible outside the cabin. The property and buildings are valued at approximately $30,000 to $35,000 and are well maintained.

■ The questions in this case are merely whether or not plaintiff was in possession of her property within the meaning of Minn. St. 1967, § 281.13, so as to render service of the notice of expiration of redemption by publication alone insufficient to terminate such period of redemption, and, secondly, whether or

not plaintiff's status as a nonresident materially affects those statutory requirements regarding the manner of service of notice of expiration of redemption.

Plaintiff contends that the maintenance and regular use of the property by plaintiff, her tenants, and guests as summer recreational lakeshore property constitute "possession" within the meaning of § 281.13, so that the service of the notice of expiration of redemption by publication alone was insufficient to terminate the period for redemption. Section 281.13 provided in part:

"Every person holding a tax certificate after expiration of three years after the date of the tax sale under which the same was issued, may present such certificate to the county auditor; and thereupon the auditor shall prepare, under his hand and official seal, a notice, directed to the person in whose name such lands are assessed, specifying the description thereof, the amount for which the same was sold, the amount required to redeem the same, exclusive of the costs to accrue upon such notice, and the time when the redemption period will expire. If, at the time when any tax certificate is so presented, such lands are assessed in the name of the holder of the certificate, such notice shall be directed also to the person in whose name title in fee of such land appears of record in the office of the register of deeds. The auditor shall deliver such notice to the party applying therefor, who shall deliver it to the sheriff of the proper county for service. Within 20 days after its receipt by him, the sheriff shall serve such notice upon the persons to whom it is directed, if to be found in his county, in the manner prescribed for serving a summons in a civil action; if not so found, then upon the person in possession of the land, and make return thereof to the auditor. If the persons to whom the notice is directed cannot be found in the county, and there is no one in possession of the land, of each of which facts the return of the sheriff so specifying shall be prima facie evidence, the service shall be made by three weeks' published no-

tice, proof of which publication shall be filed with the auditor." [1]

The form to be used for the notice of expiration of redemption, set forth in § 281.13, includes the following provision:

"* * * [T]he time for redemption of such piece or parcel of land from such sale will expire 60 days after the service of this notice and proof thereof has been filed * * *."

Minn. St. 281.14 provides:

"The time for redemption from any tax sale, whether made to the state or to a private person, shall not expire until notice of expiration of redemption, as provided in section 281.13, shall have been given."

In the case at bar, service by publication was the only method of service employed. Service in this manner is allowed only "[i]f one or more of the persons to whom the notice is directed cannot be found in the county, and there is no one in possession of the land." If the persons to whom the notice was directed could be found in the county, or someone was in possession of the land, service by publication alone would not be authorized by Minn. St. 1967, § 281.13, and thus would be sufficient to cause the expiration of the period of redemption.

■ It appears that a deputy sheriff of St. Louis County visited the property on March 15, 1968, attempting to serve the notices of expiration of redemption. The returns of service state that the deputy was unable to find Gillstrap or his wife in the county and that no one was in actual possession of the land. Minn. St. 281.13 provides that the return of the sheriff shall be prima facie evidence of such facts. The question then for the lower court and for this court must be whether the evidence received at trial rebutted the statement in the sheriff's returns that no one was in possession of the property. If the evidence rebuts the sheriff's returns and shows that someone was in possession of the property, then defendant's service is insufficient to give

---

[1] The amendment of this statute by the 1969 legislature, L. 1969, c. 753, § 1, is not applicable.

notice of the expiration of the period of redemption, that period has not expired, and plaintiff has not been divested of her fee simple estate in the property.

This court has heretofore had occasion to consider the nature of possession required in cases like this one. Three cases are directly applicable and controlling here: Nygren v. Patrin, 288 Minn. 54, 179 N. W. (2d) 76; St. Paul Swimming Club v. First State Bank, 148 Minn. 430, 182 N. W. 514; Wallace v. Sache, 106 Minn. 123, 118 N. W. 360.

In Wallace v. Sache, *supra*, the plaintiff brought an action to quiet title to property which the defendant claimed under tax assignment. As in the instant case, no attack was made on the tax judgment or the tax assignment, but the manner of service of notice of expiration of redemption was challenged. On appeal this court held the following facts found by the trial court to constitute possession and notice of such possession to defendant (106 Minn. 124, 118 N. W. 360):

"* * * Some time prior to October 14, 1904, the 'crop of potatoes had been harvested and removed from said premises. On that date there was no inclosure of any sort around said lot, which was not in any manner inclosed, either by a fence or otherwise, but on said date there was plainly visible ridges of earth on said lot from which the crop of potatoes had been dug, and old potato tops and some small potatoes were then lying upon the surface of the ground. That upon the surface of said lot were then more or less weeds and grass, which had grown upon the same between the potato hills during the season said crop of potatoes had been grown and harvested by the plaintiff as aforesaid.' "

In discussing whether the foregoing facts constituted possession, this court pointed out that the cases in which the exact meaning of the term "actual possession" is considered are to be found principally in the law of adverse possession and further stated (106 Minn. 124, 118 N. W. 361):

· · "The actual fencing and inclosing of a tract are not necessary to constitute adverse possession. *Ordinary use and the taking of the ordinary profits of the land will suffice.*" (Italics supplied.)

In response to the defendant's contention that the facts showing possession did not indicate what particular individual had been in possession of the lot, we said (106 Minn. 125, 118 N. W. 361):

"* * * It is no answer at all to say that such possession did not indicate 'what particular individual had been in possession of the lot while the crop was being raised.' This would have been equally true if the lot had been fenced and also had upon it a vacant house. The improvement was notice of possession. It was incumbent upon the defendant to find the person in possession.

"It follows that the right to redeem the property had not been eliminated."

The question of possession was again considered by this court in St. Paul Swimming Club v. First State Bank, *supra,* an action to set aside a mortgage foreclosure on the ground that service of notice of foreclosure was not sufficient under the applicable statute requiring service upon the person in possession of the mortgaged premises. In that case the property consisted of a small tract of land near White Bear Lake. A clubhouse on the tract was personally occupied by the members of the plaintiff corporation from May to October each year. The clubhouse was equipped with household goods, furniture, kitchen and dining room utensils, bedding, boats, and other personal effects used and kept in lakeshore summer homes or clubhouses when not in actual use. This personal property had a value of several hundred dollars. As in the instant case, no one was present on the property when service was attempted. The process server, although he observed the improvements by looking through the windows, found the doors fastened by padlocks and made a return of service stating that the premises were vacant and unoccupied.

On these facts the lower court determined that the plaintiff was in possession of the property and failure to serve the notice was fatal to the validity of the proceedings. This court affirmed, stating (148 Minn. 432, 182 N. W. 515):

"* * *. The [lower] court ruled in harmony with our decisions in like cases, and correctly held that, though no officer or agent of plaintiff was upon or about the premises in the personal charge thereof, yet the premises were in the actual occupancy of plaintiff within the meaning of the statute. Wallace v. Sache, 106 Minn. 123, 118 N. W. 360. * * * [H]ere the presence within the building of the goods and chattels referred to was conclusive that some one was in the possession and control of the premises * * *."

While the St. Paul Swimming Club case concerned a mortgage foreclosure proceeding, this court said that an attack on the service of notice of foreclosure could not be distinguished from an attack on the service of notice of expiration of redemption of a tax assignment certificate, the question relating to possession being the same. Thus, the discussion in that case of the nature of possession requiring service of notice upon the person in possession is directly applicable here.

The instant case, like the St. Paul Swimming Club case, involves lakeshore property with buildings thereon, kept and maintained for summer recreational use and normally closed during the winter (although plaintiff's property was also used for a portion of the winter for several years). The cases are alike in that the buildings in both were kept equipped and supplied with household goods.

Wallace v. Sache, *supra*, was deemed by this court to be controlling in the St. Paul Swimming Club case. Both are controlling in this case and their application to the facts herein shows that as a matter of law plaintiff was in possession of the property and defendant's notices of expiration of redemption were not sufficient.

Subsequent to the commencement of this appeal, this court again considered the nature of possession of the type with which we are here concerned. Nygren v. Patrin, *supra*. The Nygren case involved an action to quiet a tax title, in which defendants, the original property owners, contended they were in possession of the property and that failure to personally serve the notice of expiration of redemption was fatal to the proceeding. That case differs from the instant case in that it involved a tax forfeiture proceeding in which the property was conveyed to the plaintiff subsequent to its forfeiture to the state. That difference is important only because in that type of proceeding a different statute, Minn. St. 281.23, subd. 5, sets forth the requirements for service of notice of expiration of redemption. In so far as relevant, Minn. St. 281.23, subd. 5, provides:

"Forthwith after the commencement of such publication the county auditor shall deliver to the sheriff of the county a sufficient number of copies of such published notice for service upon the persons in possession of all parcels of such land as are actually occupied, together with a copy of the posted notice or notices referred to in such published notice. Within 30 days after receipt thereof, the sheriff shall make such investigation as may be necessary to ascertain whether the parcels covered by such notice are actually occupied or not, and shall serve a copy of such published notice upon the person in possession of each parcel found to be so occupied, in the manner prescribed for serving summons in a civil action."

Minn. St. 1967, § 281.13, with which we are concerned in the instant case, similarly requires service of notice upon persons in possession in the manner prescribed for serving a summons in a civil action. The statutory requirements and the issues presented regarding possession in the Nygren case and the instant case are therefore the same.

This court in Nygren held that the evidence was sufficient for the trial court to find the defendants to be in possession of the property and to find the service of notice of expiration of re-

demption insufficient. The evidence showed that defendants resided in St. Paul and utilized the property in dispute primarily on weekends; that the property included a two-story house indisputably in a state of disrepair; that the electricity had been turned off 2 to 4 years before trial; that various windows were broken and the paint was peeling; that the lawn was overgrown with wild grass and brush; and that the porch had been removed from the front of the house and not replaced. The evidence further showed that there were beds, chairs, a table, refrigerator, stove, and dishes and dry groceries in the building. The trial court ruled that defendants were in possession of the property and that therefore the requirements for service of notice of expiration of redemption had not been complied with and the forfeiture was invalid. This court affirmed.

Certainly the facts of the Nygren case relating to possession are similar to the facts in the instant case, the primary difference being one of degree only. Since the facts in the instant case show far more conclusively that plaintiff was in possession of her property and gave far greater notice of possession to anyone attempting to serve notice of expiration of redemption than those in Nygren, the result reached in Nygren is compelled in this case. The evidence in this case clearly rebutted the St. Louis County sheriff's return of service. By way of example, plaintiff's testimony showed that the furnishings in the buildings are much more modern and impressive than those described in the Nygren and St. Paul Swimming Club cases and that the property has been maintained the year around, the buildings have been painted, and a new roof has been put on the main cabin. All of these things reflect the high value of the property, which constitutes a regularly used summer recreational property.

The purpose of requiring service of notice of expiration of redemption upon parties in possession of the property is to employ the type of service most likely to give an owner notice of proceedings in which his title to the property is placed in jeopardy. The statutory requirements with reference to the service

of notice of expiration of redemption must be strictly complied with. Nygren v. Patrin, *supra;* McHardy v. State, 215 Minn. 132, 9 N. W. (2d) 427. This court has stated that it is incumbent upon the party seeking to eliminate a right of redemption to find and serve the party in possession even where the indices of possession do not indicate the identity of the particular person in possession. The evidence herein shows that defendant not only could, but did, when necessary, find plaintiff to give her notice of the Torrens action affecting the property.

We conclude that the evidence clearly shows that plaintiff was in possession of her property at all times pertinent hereto and that defendant's attempted service of notice of expiration of redemption by publication alone was insufficient to terminate the period within which plaintiff may redeem her property from defendant's tax assignments. The fact that plaintiff, while in possession of her property within the meaning of § 281.13, was not a resident of Minnesota and was absent from the state at the time of attempted service of notice of expiration of redemption does not render service of said notice by publication alone sufficient to terminate the period of redemption since the notice must be served upon her in the manner provided for service of summons in a civil action. Furthermore, since there is no need to obtain personal jurisdiction over the person in possession, there is no prohibition against personal service upon him outside the state.

Affirmed.